Mr. Woods represented himself at the district court where he was convicted of multiple child pornography offenses after a jury trial. He raises multiple challenges to this jury trial as well as a challenge to the $2,500 assessment imposed at sentencing. I'm happy to address any of the arguments raised in the brief, but I will start first with the district court's misstatement on the reasonable doubt standard. After jury instructions were read, which were not disputing, were correct and did correctly delineate the reasonable doubt standard. But during Mr. Woods' closing arguments, the district court affirmatively told the jurors that the reasonable doubt standard does not require near certainty of guilt. This is an affirmative misstatement and requires automatic reversal because it is structural error. As a preliminary matter, plain error review is not appropriate in this case. It's important to consider the context of when this statement was made. Mr. Woods was making an argument, the prosecution objected, and then in response, the district court ruled in response to that objection after this clear error statement and said, no, you don't have to prove clear error. I'm paraphrasing. You don't have to prove clear error. It's reasonable doubt as I've just told you. The prosecution appears to be arguing, if in a ruling that your opposing counsel makes an objection, it's ruling. If it doesn't go in your favor, you then have to object to preserve error for appeal and say, well, no, actually, your ruling is wrong. Any litigate would understand that if the ruling is against them, if there's an objection made by opposing counsel. And I would urge this court not to encourage that kind of back and forth with the district court as necessary to preserve any kind of argument on appeal. Turning to the merits of the case, this was an affirmative misstatement of the reasonable doubt standard under Jackson v. Virginia. This is almost, not exactly, Jackson v. Virginia uses near certitude of guilt. Other Supreme Court cases use that language. Eighth Circuit cases use that language. So to say it doesn't require near certainty is just wrong under this court and Supreme Court precedent. In response to this, the government tries to liken this case to the West case. And that was a case where the district court had ordered a new trial after discovering one of the reasonable doubt instructions was bad. One discussed preponderance of the evidence. But on appeal, this court reversed the grant of a new trial finding, well, yes, there's one kind of wrong statement, well, clearly wrong statement on reasonable doubt. But I think in that case, there were five other instructions that properly defined reasonable doubt. And in any jury instruction challenge, courts, of course, have to analyze the jury instructions as a whole. And because there was more correct reasonable doubt standards, this court declined to find that a new trial was necessary. But that's not what we have here. We don't have any, what we have is we had the proper judge said, no, it's not clear error. It's reasonable doubt based off of the instructions that I've just given you. So what the district court was telling the jurors is that this wrong statement. If you don't mean clear error, you mean near certainty. Yeah, near certainty, sorry. It's not near certainty. So what the district court was saying is saying, near certainty is inconsistent with the reasonable doubt instruction I've just given you. So even though there was a correct reasonable doubt instruction, it can't clarify or undo or make this court not concerned of this misstatement because the district court in making this misstatement said, what I'm telling you is consistent with what I've already given you in these written instructions. Well, he did, the district court, she, sorry, the district court did end with proof beyond a reasonable doubt as you have been instructed. Is that what the district court said? Yes. So the, and I think if it was just that in isolation, then there would, I'd be, have a lot harder time making this argument. The problem is, is the sentence immediately preceding that the court- Quote that to me because I don't have that in the notes. It says, the jury, the government does not have to prove by a near certainty. The burden is proof beyond a reasonable doubt as you've been instructed. So what the court in doing that is saying, I've told you reasonable doubt. That's your standard. That does not require near certainty. And it's a clever argument. You're borrowing this language from a Supreme Court opinion, but I don't think there's any cases, correct me if I'm wrong, that say that that needs to be part of an instruction or that is the, I don't know, maybe you're, I think your argument is effectively it is the same as the instruction. Do you have anything that says that has to be part of the instruction or that, and you know, I'm sure there's not a case exactly like this, but one where a comment like that is made and the court has said, well, that's inconsistent with the reasonable doubt instruction. I haven't found one with factual makeup like this case. As far as do they have to provide this language? No, they don't. And I think we'd have a much more difficult argument if we were just saying the court should have given the near certainty language or near certainty language and didn't. But that's not how we're presenting it, and that's not the issue here. The issue here is that in response to this objection, the district court then made a misstatement, which lowered the burden of proof, lowered the burden of proof for the government in this case. Yeah, I guess what I'm looking for is some support for the proposition that this is a misstatement in the instructional context rather than you're lifting it from a sort of different context. I don't know of any case saying that it is error to not call it near certainty. It just, our point is courts over and over and over again have said reasonable doubt is consistent with the subjective near certainty of guilt. So it seems when the Supreme Court and this court has said over and over again that's what it is, for a court to come in and say no it's not, that seems wrong, and that's an incorrect statement on the reasonable doubt  Yeah, I get your argument. As far as something saying that, no, I did not find any case. And I don't think there's any dispute on this, but the error is structural and requires automatic reversal without regard to harmless error. I know that there is some dispute on the question of plain error, and we argue that plain error doesn't apply, and as I'll get into in a second, at a time, that even under plain error, if it's a structural error, automatic reversal is required. But I'll discuss that when discussing the next argument raised in the brief, that the district court statements to Mr. Woods infringed on his 6th and 14th Amendment rights to testify on his own behalf, and this was also structural error and requires automatic reversal. District courts are within, it's valid and within the bounds to warn of perjury in general, but here the district court's admonitions cross the line. The district court here stated I have, after giving the general warnings of perjury and the obstruction enhancement, but the court stated, but given the nature and extent of the evidence in this case, I have some real concerns about you exposing yourself to additional charges or additional enhancements if you take the stand. This is getting more into advising, and this is getting more into pushing the defendant into making the decision one way or another. In the case last cited in our briefs, this is improper. This is more akin to the true case. There the language was a bit stronger where the prosecutor essentially said, I can and will charge you with perjury, but the difference here is that the statement's coming from a district court judge, who obviously has more authority and more gravitas, or has more of the ability to persuade someone than a federal prosecutor. And it's also just illustrative of why this should be discouraged, because the court was warning and pushing for perjury charges or enhancements when, if a defense attorney, which I understand that he was pro se, is looking at this case, his guidelines were off the chart. He was likely going to be sentenced if he was convicted to an extremely high sentence. So to say, well, you shouldn't testify because you might get this two-level enhancement is not as bad as pleading someone to mandatory life, but I don't think any defense attorney would say, no, this two-level enhancement, you should not testify in your own defense. And I think that illustrates why this is improper and why it's structural error under this circumstance. Well, again, help me with the preceding sentences. Yes. Did the district court use could in all of the preceding sentences? It could lead to perjury. It could be a sentencing? Yes, I believe so. It wasn't as... Does that affect it, having the coulds in all of the preceding sentences? I think if it was just that. I think if it was just the district court saying, you could have perjury charges, there's the possibility of an enhanced sentence. If it was just that, then I think that would be proper and there wouldn't be any argument to make. Our real issue is with that next paragraph, where the district court is then kind of inserting her own judgment into what she thinks the defendant in this case should do, weighing the evidence and saying, given the nature of what we've seen, I have some concerns about you exposing yourself to perjury, essentially saying, I think you're going to lie on the stand. So because of that, we would argue that it was error and did cross that line. I want to briefly discuss the... There's a question of, well, how do you show that that's what caused him not to testify? I couldn't find anything that says, oh, it's this burden and this person has the burden. But I think the Webb v. Texas case out of the Supreme Court is instructive because there, the Supreme Court, it didn't deal with a defendant's right to testify. That dealt with a defense witness. But the court said, in that case, said, look, the witness showed up and only refused to do so after the admonition from the district court. And the court said that, quote, strongly suggests that the judge's comments were the cause of the refusal to testify. And in Webb v. Texas, the court did reverse based off of the district court statements and found that the constitutional rights were violated. I'll briefly discuss structural error and why it's still automatic reversal, even if it's plain error review. Certain arguments are structural error because the Supreme Court said they are so fundamental that they automatically violate an individual's substantial rights. That is the exact language we have for the third prong of plain error, whether something violates someone's substantial rights. So it would not make sense to say it's structural error because it's so important. So it automatically violates your substantial rights and then say, but it does not violate your substantial rights when we're looking at the third prong of plain error review. And many of the cases that the government cites are habeas cases. AEDPA is much more unforgiving than I think you would have on a standard of plain error review. So I would urge the court to consider those not persuasive when considering the arguments made here. If there are no immediate questions, I would reserve the remainder of my time for rebuttal. Thank you. Thank you, Ms. Quick. Good morning. May it please the Court. Kyle Hanson on behalf of the United States. I'll start where Ms. Quick started, but provide a little more context with that instruction issue. The defendant's five-page closing argument prompted at least 10 objections and as many admonitions from the district court. He added facts that were not in evidence, and he added law that was not in the jury instructions. And this is something that was anticipated from the beginning of the case. The government's motion in limine, which is document 149, pages 7 to 8, specifically asks that he not be allowed to make any legal arguments that were not reflected within the jury instructions. But that's precisely what he did. First, he said that the government's burden is to prove more than a reasonable doubt. And then he made the comment about near certainty, which prompted the court's comment. But unlike the defendant, the court's comment did not invoke a comparison between near certainty and beyond a reasonable doubt, and which one is higher or less than the other. The way the court intended it was near certainty is not the standard I've instructed you on. It's not the standard that everyone has agreed to apply here. So instead of applying that language that the defendant has belatedly offered, apply the instruction, the tested instruction that this court has repeatedly approved, and the instruction that everyone in the case agreed to apply until that last minute of his closing argument. And when we're looking at whether there's error, but particularly whether there's any sort of structural error, the standard is whether there's a reasonable likelihood that the jury misapplied the standard, that the jury applied a lower burden of proof. And West is the instructive case on this, where there was actually a written jury instruction that referred to the preponderance of the evidence standard. And despite that written instruction going to the jury and potentially creating some confusion between the two standards, this court said that viewing the instructions as a whole as a must, the correct instructions outweighed that offhand singular instance of preponderance of the evidence. And I would submit that in this case, there's even less supporting the defendant's argument. It is an oral statement. It's one that we disagree over what it was intended to be, whether it's comparative or just redirecting the jury to the correct standard. But it's certainly less potential for prejudice than what was present in West. And in this case, the court repeatedly gave the correct beyond a reasonable doubt instruction. It gave it at the beginning of trial. It even mentioned the heightened burden of proof during Vordir. And then in the written instructions, it again said, this is the standard we applied, beyond a reasonable doubt. This is a model instruction that's been approved. So there is no reasonable likelihood that the jury applied the wrong standard. The instructions were read before the argument? I believe so. Most of them were. I think they were split. But I believe the reasonable doubt instruction was read before and then a few instructions afterward. And did the jury take the instructions into its deliberations? I believe that is the practice, yes. So because this case does not involve a structural error, we're looking at just standard prejudice. And this was not a closed case. Multiple men who were involved with Mr. Woods testified about receiving child pornography from him, about being invited over to the house to abuse the children. We have photographic proof that supports their testimony. We have text messages that support their testimony. So it's not a closed case where quibbling over the beyond a reasonable doubt instruction would have affected how the jury reached its conclusion beyond a reasonable doubt. Turning to the court's warning about Mr. Woods testifying, again, to provide a little more context, the record does not support that it was the court's statements that caused Mr. Woods to decide not to testify. So even before the court gave its warning, it asked Mr. Woods, do you still plan to testify? And his response was, I would need to think about that again. That's page 272 of the transcript. The court's warning that he now complains of was 272 to 273 of the transcript. So even before that warning, he's on the bubble about whether he's going to testify. And in particular, he's on the bubble because he knows his sister is coming in as a potential witness. And he asks, again on page 272, is it OK if I confer with my witnesses? And the court says, you can talk to Michelle Woods, who's his sister. And then they have a break, and he comes back, and he announces that he does not plan to testify. So we think that the natural conclusion there is he talks to his sister, decides he can get that alibi in through her, and he no longer has to testify. But even beyond that, if we look at the warning that the court gave, it fits in with its demeanor throughout the trial where the court, recognizing that Mr. Woods was pro se, that he was having some difficulties like any pro se litigant tends to have, gave advice, gave helpful advice through the trial on different issues that came up. And the tone of her warning was not, I'm going to put you in jail like it was in Webb. I mean, Webb, that the defendant relies on, the district court told the witness, I will personally see to it that your case goes to the grand jury, and that you will be indicted, and it will add time to your sentence. And in this case, the warning was just, it could have consequences. Well, the coulds are in the preceding paragraph. I focused on the coulds. But that's not what the judge says. The judge says her expectation, real concerns, and the coulds are gone by that paragraph. So what do you think about that? Yeah. So the way I interpret the expectation comment was, I don't think you would testify falsely, but it seems to be headed that way. So I just wanted to let you know of what those possible consequences could be. And then as to whether there were signs that he could testify falsely, that's one of the three main factors that the court has to consider before giving this kind of admonition, is whether there is a likelihood that the either defendant or a witness could testify falsely. And that's an element that in the true case was not present. The true case is from the Eighth Circuit, where the prosecutor said to a witness coming in, either I'm going to charge you with perjury, or I'm going to charge you with giving a false statement to the police ahead of time. So it's kind of a foregone conclusion for that witness. If he testified, he was going to face a charge. But the true case also is very pointed in saying, there was no indication in the record to that point how the witness was actually going to testify and whether that testimony would be false. Whereas in this case, there is a consistent pattern of the defendant suggesting how he's going to testify, that he was not present at his own house taking videos of Mr. Heider abusing the victim, but that he was actually down at the river with his family, including the same victim who was on photographs being abused at his house. So in that sense, it's distinguishable from true that there is a clear indication that he could testify falsely. As to whether this is a structural error, it would be a much different case if the court said something like, I think you're going to testify falsely, so therefore I'm not going to let you take the stand. But that's not at all what happened. The court gave its advice and it was still up to Mr. Woods to make that choice. And in fact, the court said, consult with your attorney, but this is your decision. So it was within his control whether he was going to testify and whether he was going to risk those adverse consequences that could happen if he testified falsely. Beyond that, most courts that have looked at this and that I've cited in my brief say that either we're going to look at this as harmless error or plain error, depending on whether it's preserved or not. None of them that I've found have said it's a structural error that requires reversal. Without any more specific questions, defendant received a fair trial. He was convicted on overwhelming evidence and the just outcome in this case is to affirm his convictions and sentence. Thank you. Thank you, Mr. Hanson. I'll go back to that misstatement on the reasonable doubt and whether that actually impacted the jury in this case. And I would note that this came after the instructions. It's the last thing that the jurors were told about reasonable doubt from the mouth of the district court judge. And I would compare this to this court's case law when evaluating prosecutorial misconduct claims, in that if it's something that's said in rebuttal and it's the last thing that the jury hears, this court is more concerned that it is prejudicial and has had an impact on the jury. And I would assert that these circumstances here are similar to that. Did the instructions go back with the jury to deliberations? I agree with Mr. Hanson. I don't know specifically that happened, but I know that that's generally the practice, is that the written copy of the instructions are given to the jury. So they would have it, but again, I think it's different hearing it from a district court judge. And again, when they're reading these instructions, they're reading this reasonable doubt instruction, and the district court has told them that it doesn't require a near certainty. So they've been told that, and when they're evaluating it, that's kind of what they have in their minds. And that is, in our position, a misstatement from Supreme Court or an Eighth Circuit precedent. And we're not saying, and the prosecution started their argument talking about Mr. Woods making a lot of misstatements, taking liberties with talking about the law. Our position isn't that the district court could do nothing. Even in the normal case, or even when there's appointed counsel, district courts will say, ladies and gentlemen of the jury, I instruct you on the law. I tell you the law. They're just making arguments. They don't tell you the law. That would have been completely valid and would not, I mean, there's no challenge to that in this case, but the problem is the district court taking it a step further and making a statement that's inconsistent with Supreme Court precedent. And I would, turning to the question of the infringement on the right to testify, it does not need to rise to the level of a district court saying, no, you can't testify. One of the, I think the most instructive case we cite is the Arthur case out of the D.C. Court of Appeals, where in that case it was a badgering in the sense that the district court kept saying over and over again, this question of, I can't remember if it was perjury or, they're going to bring in your prior convictions. They're going to bring in your prior convictions. And there the court said, even though the district court didn't say, I'm not allowing you to testify, that that type of badgering was enough to say you've infringed on someone's right to testify. That case was their standby counsel. I don't know off the top of my head. Well, does it make a difference, because that is, I found the actual words now. Thank you. But finding the actual words, that the court is careful to say very quickly, listen, consult with your attorney this. Now, go visit with your counsel and listen to the counsel. I'm paraphrasing, but that is what it says. And I think in either these cases where an individual is testifying on their own behalf, or in the cases where it involves a defense witness being warned about the questions of perjury, I think it's usually that they have counsel. And especially in the cases it's clear, I think it was the true case, that they have counsel appointed to represent them and advise them, but courts still find it rises to the level of badgering. If there are no further questions, we would ask this Court to reverse and remand for a new trial. Thank you. Thank you, Ms. Quick.